# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **HARRY WOODY** | : | **CIVIL ACTION** |
| | : | |
| v. | : | |
| | : | **NO. 5: 17-4503** |
| **NANCY ANN BERRYHILL** | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                                          **October 1, 2018**

The Social Security Administration denied Harry Woody's application for social security disability and disability insurance benefits.[1] Mr. Woody asked for this Court's review and remand for further fact finding. After carefully reviewing the record, Judge Rice's comprehensive Report and Recommendation, and the parties' filings, we agree with the majority of Judge Rice's recommendations, and on those grounds, we overrule Mr. Woody's objections.

But we must remand on the limited question of whether jobs are available in the national economy based on the presently undisputed evidence of Mr. Woody's ability to lift only five pounds. The Administrative Law Judge did not provide substantial evidence for his decision to disregard Mr. Woody's subjective functional assessment of being able to lift only five pounds. We remand for a finding based on substantial evidence whether Mr. Woody can lift up to twenty pounds as applied by the Administrative Law Judge, and if not, whether there are jobs existing in significant number in the national economy for Mr. Woody given his present ability to lift limited weight.

## I. Background

### *Mr. Woody's condition when seeking disability benefits.*

Harry Gordon Woody, 53 years old at the time of the 2016 decision denying him benefits, worked as a finisher and overhead grinder in a steel plant from 1998 until 2013.[2] Mr. Woody's medical records begin in January 2012, when he saw an orthopedist for right knee pain.[3] Mr. Woody had surgery on his right knee in February 2012, but continuing problems after surgery caused him to injure his left knee.[4] A doctor diagnosed Mr. Woody with myelopathy and cervical stenosis in his neck, and he had thoracic spine surgery in July 2012.[5] Doctors cleared Mr. Woody to return to work in December 2012.[6] In February 2013, he again experienced neck pain and pain in his left shoulder.[7] Mr. Woody had cervical spine surgery in March 2013.[8] Mr. Woody stopped working in 2013.[9] On September 25, 2013, he filed a claim for disability benefits based on his left knee surgery, thoracic spine surgery, cervical spine surgery, a torn left shoulder muscle, and deterioration of nerves.[10] Mr. Woody's alleged onset of disability date is July 1, 2012.[11]

### *Mr. Woody's condition in 2016.*

On March 10, 2016, Mr. Woody testified before Administrative Law Judge Donald M. Graffius.[12] He described trouble sleeping because of the metal implants in his neck and spine.[13] He could walk for thirty to forty-five minutes before needing a break, he could stand for twenty minutes before needing a break, and he could sit for twenty to forty-five minutes before needing a break.[14] Mr. Woody could only lift about five pounds without experiencing pain, but before his injuries he could lift about 150 pounds.[15] He helps his wife around the house, washes dishes, helps cook dinner, goes grocery shopping with his wife, and drives from Reading to Philadelphia once a week.[16] He no longer mowed the lawn, hunted, or fished as he used to, and he had to take

2

breaks from driving to a family vacation.[17] Mr. Woody saw his primary care doctor once every three months and his orthopedic doctor once every six months.[18] He takes his prescribed pain medication only when he "really, really need[s] it."[19] Mr. Woody had hearing aids, but he did not wear them because they got "wet" after fifteen to twenty minutes and became "useless."[20]

### *ALJ's Graffius's denial of benefits.*

On April 7, 2016, ALJ Graffius denied Mr. Woody's application for disability benefits.[21] Applying the required five-step analysis for determining whether an individual should be granted disability benefits, ALJ Graffius first found Mr. Woody had not engaged in substantial gainful activity since the alleged onset date.[22] Second, ALJ Graffius found Mr. Woody had eight severe impairments.[23] Third, ALJ Graffius found none of the impairments mandated a finding of disability.[24]

Fourth – and most pertinent to our decision today - ALJ Graffius found Mr. Woody had a residual functional capacity ("RFC") to perform "light work" except he is limited to occasional postural maneuvers such as balancing, stooping and climbing ramps or stairs with no kneeling, crouching, crawling, climbing ladders, ropes, or scaffolds, or overhead work; limited to occasional front and lateral reaching with the upper, left, non-dominant upper extremity; and he is limited to occupations which do not require fine hearing capability or the need to converse over more than moderate background noise.[25] In making this finding, ALJ Graffius found Mr. Woody's medical conditions could reasonably cause his complaints, but Mr. Woody's claims regarding their intensity, persistence, and limiting effects did not comport with the objective medical evidence.[26] ALJ Graffius called the objective findings related to Mr. Woody's ailments "not overly impressive."[27] Finally, ALJ Graffius found Mr. Woody unable to complete any past

3

relevant work but found jobs existing in the national economy in significant number which Mr. Woody could work.[28]

Mr. Woody sought review by the Appeals Council who denied his appeal. The Commissioner denied him disability benefits. He then filed this case seeking our review of the denial of benefits.[29] We referred his petition to Judge Timothy R. Rice for a Report and Recommendation.[30]

### *Judge Rice's Report affirming the ALJ's findings.*

Magistrate Judge Rice recommended we deny Mr. Woody's request for review.[31] Magistrate Judge Rice found ALJ Graffius sufficiently reviewed and accurately summarized the objective medical evidence, despite his "dismissive statement" about the objective findings being "not overly impressive."[32] Judge Rice found ALJ Graffius did not need to rely on expert testimony to interpret the record because ALJ Graffius supported his decision with substantial evidence.[33] Turning then to ALJ Graffius's mischaracterization of Mr. Woody's spine condition, Magistrate Judge Rice found any error harmless.[34] Finally, Judge Rice found ALJ Graffius properly weighed Mr. Woody's strong work history.[35]

## II. Analysis

Mr. Woody filed several objections to Judge Rice's detailed Report. Mr. Woody challenges ALJ Graffius's decision for: (1) mischaracterizing the objective evidence of Mr. Woody's worsening back condition; (2) failing to obtain an objective consultative examination with an orthopedic specialist; (3) mischaracterizing Mr. Woody's level of treatment as "limited"; (4) failing to properly evaluate Mr. Woody's activities of daily living; and (5) disregarding Mr. Woody's subjective allegation he can lift only five pounds without pain. Mr. Woody argues ALJ Graffius would have limited Mr. Woody to less than the full "sedentary" exertional base had ALJ

4

Graffius afforded appropriate weight to Mr. Woody's testimony, which would make Mr. Woody disabled under the guidelines.

We conduct a *de novo* review of Mr. Woody's objections to Judge Rice's Report.[36] We "may accept, reject, or modify, in whole or in party, the findings or recommendations made" by Judge Rice.[37]

By contrast, our review of ALJ Graffius's findings is deferential and his findings of fact are conclusive if substantial evidence supports them.[38] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[39] Substantial evidence is "more than a mere scintilla but must be somewhat less than a preponderance of the evidence."[40] To determine whether substantial evidence supports a factual finding, we review the record as a whole.[41] We are bound by ALJ Graffius's factual findings if supported by substantial evidence, even if we would have decided the matter differently.[42]

ALJ Graffius must determine whether Mr. Woody is disabled when examining a challenge to the Commissioner's initial decision denying benefits. Under Title II of the Social Security Act ("Act"), a person who has contributed to the program who suffers from a physical or mental disability is afforded insurance benefits.[43] Under Title XVI of the Act, a disabled person may also be entitled to supplemental security income.[44] A disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[45] A claimant is only disabled if his impairments are severe to the point it makes his previous work impossible to do or precludes any other kind of gainful work available in the national economy.[46]

The Commissioner applies a five-step evaluation to determine if a claimant is disabled.[47] If the Commissioner finds disability or non-disability at any step during the analysis, the Commissioner will end the analysis.[48] Under step one, the Commissioner determines whether the claimant is engaged in substantial gainful activity.[49] If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to step two and is required to determine whether the claimant is suffering from a severe impairment or combination of impairments.[50] Under step three, if the claimant's impairments are severe, the Commissioner compares the impairments to a list of impairments presumed severe enough to preclude gainful employment.[51] If the claimant's impairments or their equivalent matches a listed impairment, the claimant is presumed disabled.[52] If the claimant's impairments do not match impairments on the list, the Commissioner proceeds to step four, where the Commissioner determines the claimant's residual functional capacity ("RFC").[53] A claimant's RFC is "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."[54] In step five, if the claimant is unable to return to past work, the Commissioner must prove "there are other jobs existing in significant numbers in the national economy which claimant can perform, consistent with his medical impairments, age, education, past work experience, and [RFC]."[55]

### A. Substantial evidence supports most of ALJ Graffius's findings.

We overrule Mr. Woody's first four objections to Judge Rice's Report. ALJ Graffius cited substantial evidence on each of these findings.

An Administrative Law Judge must "consider all available evidence" to evaluate the "intensity and persistence" of a claimant's symptoms.[56] To establish disability, a claimant must show "objective medical evidence from an acceptable medical source that shows . . . medical impairment(s) which could reasonably be expected to produce the pain or other symptoms

6

alleged."[57] In making the ultimate disability determination, an ALJ must consider "the extent to which [a claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."[58]

First, Mr. Woody alleges ALJ Graffius mischaracterized objective evidence of Mr. Woody's worsening back condition. Second, Mr. Woody alleges ALJ Graffius's failure to obtain an objective consultative examination with an orthopedic specialist constituted error. Third, Mr. Woody argues his treatment history is consistent with his own allegations, not with ALJ Graffius's RFC finding. Fourth, Mr. Woody argues his activities of daily living are consistent with his own allegations, not with ALJ Graffius's RFC finding. We disagree with Mr. Woody's arguments.

### 1. ALJ Graffius's mischaracterization of Mr. Woody's worsening back condition constituted harmless error.

Mr. Woody briefly argues ALJ Graffius failed to appreciate the worsening condition of Mr. Woody's spine when ALJ Graffius characterized a September 2015 CT scan as "continu[ing]" to show "moderate-severe" stenosis.[59] In fact, Mr. Woody's other CT scan in June 2012 only showed "mild-to-moderate" stenosis.[60] Magistrate Judge Rice found any error "harmless" because ALJ Graffius had elsewhere accurately described the severity of the stenosis and supported his opinion with substantial evidence. We agree with Magistrate Judge Rice.

Substantial evidence supports ALJ Graffius's evaluation of Mr. Woody's back ailments. ALJ Graffius accurately noted the result of the June 2012 CT scan elsewhere in his opinion, where he also accurately detailed accompanying medical findings.[61] ALJ Graffius discussed the September 2015 diagnosis in the context of the treating physician's whole report.[62] For instance, ALJ Graffius noted the treating physician found Mr. Woody could ambulate without difficulty and Mr. Woody did not have a list of other back ailments.[63] As Magistrate Judge Rice found,

7

other portions of the physician's report bolster ALJ Graffius's findings. The treating physician found Mr. Woody had received "inadequate treat[ment]" for his back pain, and he had "no red flags for back pain."[64] In January 2016, a physician found normal gait, normal/symmetric strength, and full range of motion bilaterally.[65] Indeed, ALJ Graffius's use of the word "continued" constitutes his only inaccuracy in this section of his opinion. Considering ALJ Graffius's thorough examination of both the June 2012 and September 2015 examinations, we agree with Magistrate Judge Rice the one inaccuracy constitutes harmless error.

## 2. ALJ Graffius did not need to obtain expert medical testimony.

Mr. Woody next argues ALJ Graffius needed to obtain a consultative examination with an orthopedic specialist to properly evaluate Mr. Woody's treatments, including his three surgeries. Magistrate Judge Rice found ALJ Graffius did not have to rely on such evidence. We agree with Magistrate Judge Rice.

Authority regarding whether an ALJ must obtain medical opinion testimony to formulate an RFC is "seemingly discordant."[66] Some courts hold "rarely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant."[67] But another held "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided."[68] In resolving the conflicting authority, Magistrate Judge Carlson of the Middle District of Pennsylvania found the former authority arises in cases where an ALJ rejects a well-reasoned medical opinion in favor of their own lay testimony, whereas the latter authority arises in cases where the ALJ "fashions an RFC determination on a sparse factual record or in the absence of any competent medical opinion evidence."[69]

We find Magistrate Judge Carlson's synopsis of authority instructive, and find this case more akin to the latter authority because the record contains no consultative examination. We agree with Magistrate Judge Rice's findings an ALJ can craft an RFC "without outside medical expert review of each fact incorporated into the decision,"[70] and "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC."[71] Magistrate Judge Rice found ALJ Graffius adequately supported his conclusions with (1) the objective medical evidence; (2) the limited level of treatment required; (3) Woody's activities of daily living; and (4) Woody's complaints 'to the extent consistent with the objective medical and other evidence.'"[72] ALJ Graffius did not need to obtain medical opinion testimony.

### 3. Substantial evidence supports ALJ Graffius's finding Mr. Woody had a "limited" level of treatment.

Mr. Woody argues ALJ Graffius's conclusion Mr. Woody needed only a "limited level of treatment" does not recognize the significance of three major surgeries and the various treatment modalities Mr. Woody explored. Mr. Woody specifically argues the ALJ attributed too much weight to Mr. Woody's refusal to take his prescribed doses of medication. Judge Rice found substantial evidence supported ALJ Graffius's finding of a "limited level of treatment." We agree with Judge Rice.

ALJ Graffius supported his finding of a "limited level of treatment" with substantial evidence. As Judge Rice recounted, ALJ Graffius noted the evidence showed Mr. Woody:

> (1) quit physical therapy in 2012; (2) received a shoulder steroid injection in October 2013; (3) admitted his pain had decreased with additional physical therapy in 2013; (4) occasionally took Aleve, which provided "some relief," in April 2015; (5) started occasionally taking prescription medications in September 2015; (6) noted the medications he occasionally took provided some benefit in January 2016; (7) did not consistently use a cane; and (8)

9

was taking prescription medications only once or twice per week, was taking over-the-counter medications at other times, and saw his orthopedist only every six months and primary care physician every three months at the time of the ALJ hearing.[73]

As to Mr. Woody's argument he had valid reasons not to take medication, at least one court has found refusal to take medication a valid basis for an ALJ questioning the degree and intensity of a claimant's ailments.[74] The evidence supports ALJ Graffius's finding of a "limited level of treatment."

### 4. ALJ Graffius did not err in applying ALJ Graffius's activities of daily living to his RFC finding.

Mr. Woody argues ALJ Graffius erred in considering Mr. Woody's activities of daily living in constructing his RFC determination. Judge Rice found ALJ Graffius properly evaluated Mr. Woody's activities of daily living in formulating his RFC. We agree with Judge Rice.

Mr. Woody argues ALJ Graffius erred in considering Mr. Woody's activities of daily living of caring for his children, caring for his personal needs, prepping meals, walking, driving, shopping in stores, and taking a family vacation. Specifically, Mr. Woody argues ALJ Graffius failed to account for modifications Mr. Woody had to make to those activities of daily living—for instance, his limitations in walking, needing his wife's assistance with shopping in stores, his inability to cook for long because he can only stand for twenty minutes, and his inability to carry laundry up and down the stairs. Judge Rice found the ALJ properly evaluated Mr. Woody's activities of daily living because the activities comported with other evidence of record, like Mr. Woody's weekly drives between Reading and Philadelphia, refinishing a dresser for his wife, standing or leaning when attending school events, and cutting more than an acre of grass.

"[I]t is appropriate for an ALJ to consider the number and type of activities in which a claimant engages when assessing his or her residual functional capacity."[75] As Judge Rice

found, ALJ Graffius did not ignore the modifications Mr. Woody made to his activities of daily living; rather, ALJ Graffius considered Mr. Woody's activities of daily living in conjunction with the medical evidence and afforded them corresponding weight. We agree with Judge Rice's finding Mr. Woody's activities like caring for his children, driving from Reading to Philadelphia, going grocery shopping, and going on a family vacation are inconsistent with an allegation Mr. Woody cannot work entirely.

### B. Substantial evidence does not support ALJ Graffius's decision to disregard Mr. Woody's testimony he could only lift five pounds without feeling pain.

Mr. Woody argues ALJ Graffius should have given deference to Mr. Woody's allegations regarding his functional capacity because of his long work history. Mr. Woody argues ALJ Graffius's failure to account for Mr. Woody's testimony he could lift only five pounds without pain should have been a carefully considered and well-supported proposition. Judge Rice found ALJ Graffius's failure to account for Mr. Woody's strong work history constituted harmless error because ALJ Graffius provided substantial evidence to support the few limitations he rejected. We agree with Mr. Woody.

"[W]hen the claimant has worked for a long period of time, his testimony about his work capabilities should be accorded substantial credibility."[76] Such a claimant's testimony is particularly weighty when "no contrary medical evidence exists."[77] Our Court of Appeals considers twelve years a "long period of time."[78] In cases where courts have afforded substantial weight to claimants with strong work histories, two factors tend to exist: "evidence of severe impairments or attempted to return to work."[79]

Mr. Woody worked for at least fifteen years before his injury, a duration meeting *Taybron*'s "long period of time" benchmark.[80] Also, the two factors *Corley* identifies exist in Mr. Woody's case: ALJ Graffius found Mr. Woody had eight severe impairments,[81] and Mr.

11

Woody returned to work in early 2013, after his alleged onset date of July 1, 2012.[82] Finally, a careful review of the record reveals no "contrary medical evidence" regarding how much Mr. Woody could lift without pain, nor did ALJ Graffius cite any such evidence. To the contrary, the record contains several physical therapy reports from 2013 which describe achieving Mr. Woody's ability to lift five to ten pounds with only minimal pain as a "short-term goal."[83] Mr. Woody's testimony deserves "substantial credibility."

The record contains two relevant self-assessments from Mr. Woody. First, on November 6, 2013, Mr. Woody filled out a function report in which he estimated he could only lift about twenty pounds due to his limitations.[84] On March 10, 2016, ALJ Graffius asked Mr. Woody how much he could comfortably lift or carry without pain.[85] Mr. Woody answered, "Probably about five pounds."[86] Mr. Woody then testified he could lift "150 pounds, no problem" before his injuries.[87]

In his hypothetical to the vocational expert, ALJ Graffius did not include any specific lifting limitations other than a general limitation to "light work,"[88] which restricts a worker to "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."[89] In his ultimate RFC determination, ALJ Graffius limited Mr. Woody to "light work" with other limitations, none of which limited Mr. Woody's lifting ability.[90] ALJ Graffius noted he gave "some weight to the claimant's allegations and found him limited to light work."[91]

Substantial evidence does not support ALJ Graffius's decision to disregard Mr. Woody's subjective assessment he could lift no more than five pounds without pain. ALJ Graffius reported Mr. Woody's pain "affect[ed] his ability to lift more than 5-20 pounds."[92] Indeed, Mr. Woody estimated he could lift twenty pounds in November 2013. But ALJ Graffius does not

12

specifically explain why he accepted Mr. Woody's 2013 report over Mr. Woody's 2016 testimony he could lift only five pounds.

ALJ Graffius considered the opinion of a medical provider who reported Mr. Woody could lift no more than five to ten pounds, and ALJ Graffius explained he gave the opinion little weight because it occurred shortly after March 2013 surgery, when Mr. Woody began his recovery process.[93] We do not disagree the opinion deserves little weight, particularly since it is expressly limited to the four-week period following surgery.[94] But ALJ Graffius failed to explain why he disregarded Mr. Woody's specific allegation he could lift no more than five pounds without pain. ALJ Graffius's hypothetical to the vocational expert does not cure this error. All of ALJ Graffius's hypotheticals to the vocational expert presumed "light work," which allows for lifting objects of up to twenty pounds. Because Mr. Woody's testimony is due substantial credibility, ALJ Graffius failed to provide substantial evidence or reasoning as to why he did not accept Mr. Woody's testimony as to the limits of his ability to lift weight.

### III. Conclusion

In the accompanying Order, we grant Mr. Woody's request for review in part. ALJ Graffius did not commit reversible error in mischaracterizing the worsening condition of Mr. Woody's back pain, failing to order a medical opinion, and using Mr. Woody's activities of daily living as evidence. Nor did ALJ Graffius err in characterizing Mr. Woody's treatment level as "limited."

But ALJ Graffius failed to provide substantial evidence for disregarding Mr. Woody's testimony he could lift no more than five pounds without pain. We remand for the Commissioner to determine whether Mr. Woody can lift up to twenty pounds, as required to

perform light work, and if not, whether there are jobs existing in significant number in the national economy which Mr. Woody can perform given his restrictions.

---

[1] Administrative Record ("R.") 16 (ECF Doc. No. 10).

[2] R. 185.

[3] R. 252.

[4] R. 347.

[5] R. 460.

[6] R. 286.

[7] R. 436.

[8] R. 322.

[9] R. 35.

[10] R. 63.

[11] R. 16.

[12] R. 32.

[13] R. 40.

[14] R. 40.

[15] R. 41.

[16] R. 42-44.

[17] R. 50-52.

[18] R. 48.

[19] R. 49.

[20] R. 38.

[21] R. 16.

²² R. 18.

²³ ALJ Graffius found: (1) right knee meniscus tear and partial ACL tear, (2) left partial rotator cuff tear/adhesive capsulitis, (3) osteoarthritis of the left acromioclavicular joint with bursitis, (4) status post cervical decompression/fusion, (5) a history of thoracic decompression/fusion, (6) multi-level degenerative disc disease of L5 with facet hypertrophy, (7) obesity, and (8) hearing loss. R. 18.

²⁴ R. 19 (citing 20 C.F.R. §§ 404.1520(d); 404.1525; 404.1526).

²⁵ R. 19.

²⁶ R. 20.

²⁷ R. 23.

²⁸ R. 24.

²⁹ ECF Doc. No. 11.

³⁰ ECF Doc. No. 14.

³¹ ECF Doc No. 15.

³² *Id.* at 11.

³³ *Id.* at 12-13.

³⁴ *Id.* at 13.

³⁵ *Id.* at 14-15.

³⁶ 28 U.S.C. § 636(b)(1).

³⁷ *Id.*

³⁸ *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000) (citing *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)).

³⁹ *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (quoting *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)).

⁴⁰ *Id.* (quoting *Rutherford*, 399 F.3d at 552) (internal quotations omitted).

[41] *Id.* (citing *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999)).

[42] *Trinh v. Astrue*, 900 F. Supp. 2d 515, 518 (E.D. Pa. 2012) (citing *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001)).

[43] 42 U.S.C. § 423(a)(1)(D).

[44] 42 U.S.C. § 1381 *et seq.*

[45] 42 U.S.C. § 423(d)(1)(A); § 1382c(a)(3)(A).

[46] *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B); *Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003).

[47] *Ramirez v. Barnhart*, 372 F.3d 546, 550 (3d Cir. 2004).

[48] 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

[49] *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i) (mandating finding of non-disability if claimant is engaged in substantial gainful activity).

[50] *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (mandating finding of non-disability if claimant's impairments are not severe).

[51] *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

[52] *Id.*

[53] *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[54] *Fargnoli v. Halter*, 247 F.3d 34, 40 (3d Cir. 2001).

[55] 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Plummer*, 186 F.3d at 428.

[56] 20 C.F.R. § 404.1529(a).

[57] *Id.*

[58] *Id.*

[59] Pl.'s Objections to the Report & Recommendation at 5 (ECF Doc. No. 18) (citing R. 728).

[60] R. 257.

[61] R. 21.

[62] R. 22; R. 727-30.

[63] R. 22; R. 727.

[64] ECF Doc. No. 15 at 13 (citing R. 729).

[65] R. 22; R. 720.

[66] *Smith v. Berryhill*, No. 3:16-CV-01844, 2018 WL 1442881, at *6 (M.D. Pa. Feb. 16, 2018).

[67] *See, e.g., Gormont v. Astrue*, No. 3:11-cv-02145, 2013 WL 791455, at *7 (M.D. Pa. Mar. 4, 2013) (citing *Doak v. Heckler*, 790 F.2d 26, 29 (3d Cir. 1986)).

[68] *Cummings v. Colvin*, 129 F. Supp. 3d 209, 214-15 (W.D. Pa. 2015).

[69] *Smith*, 2018 WL 1442881, at *6.

[70] *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 362 (3d Cir. 2011).

[71] *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006).

[72] ECF Doc. No. 15 at 12 (citing R. 22).

[73] R. 22-23.

[74] *See Fulmer v. Astrue*, No. 09-288, 2009 WL 3364851, at *9 (W.D. Pa. Oct. 16, 2009).

[75] *Cunningham v. Comm'r of Soc. Sec.*, 507 F. App'x 111, 118 (3d Cir. 2012) (citing 20 C.F.R. § 404.1545(a)(1), (3)).

[76] *Taybron v. Harris*, 667 F.2d 412, 415 n.6 (3d Cir. 1981) (citing *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979)).

[77] *Weber v. Massanari*, 156 F. Supp. 2d 475, 486 (E.D. Pa. 2001).

[78] *Id.*

[79] *Corley v. Barnhart*, 102 F. App'x 752, 755 (3d Cir. 2004).

[80] R. 203.

[81] R. 18.

[82] R. 286.

[83] R. 530, 546, 778.

[84] R. 191.

[85] R. 41.

[86] R. 41.

[87] R. 41.

[88] *See* R. 54-57.

[89] 20 C.F.R. § 404.1567(b).

[90] R. 19.

[91] R. 23.

[92] R. 20.

[93] R. 23 (citing R. 324).

[94] R. 324.